OPINION OF THE COURT
Charles E. Ramos, J.
The plaintiff, Charles H. Small (hereinafter Small), was a customer of the defendant Manhattan Cable Television, Inc. (hereinafter Cable), and claims that he was subjected to a wrongful termination of the cable television service provided by the defendant Cable.
Small contends: (a) that the regulations and procedures pursuant to which cable service may be terminated in this State are inadequate to protect the rights of consumers who subscribe to cable; (b) that he was not notified that service would be terminated; and (c) that although he was in arrears in paying his bill, the fact that the arrears totaled less than $40 was de minimus, and not a sufficient basis for termination.
Cable contends that Small was 88 days in arrears in his account and that it had the right to terminate, upon notice to Small.
The matter was tried before the court without a jury upon Small’s claim for $10,000 as damages for Cable’s wrongful termination of services.
Small does not rely on any contract, therefore, this court must determine whether or not the concept of due process *821 applies to the termination of cable television service, and if it does, was Small deprived of due process when his service was disconnected.
The facts are simple. Small failed to pay his bills for January, February and March of 1983. The bills for February and March contained notices to the effect that his account was in arrears and that his cable service was “subject to disconnect”. On March 29, 1983, Cable disconnected Small’s service. Small then paid his bill and service was restored six days after disconnection.
The concept of due process can apply to the activities of nongovernmental entities if there is substantial governmental involvement and if the service provided by the nongovernmental entity vitally affected the existence or the livelihood of persons using or requiring the service.
The State of New York has provided for the creation of the Commission on Cable Television, which commission promulgates rules and regulations governing the legal and technical standards of the cable franchises within the State and specifically providing for the procedures to be followed in the event a subscriber’s cable service is to be terminated. The commission is granted broad powers over the cable television industry, including the granting and renewal of all franchises, accounting systems to be used, rates to be charged, investigations of misconduct, as well as the aforementioned procedures for service termination.
The State of New York has therefore franchised Cable as a “utility” and as such Cable is an agent of the State. (Hampton v City of Jacksonville, 304 F2d 320.)
Once the State has acted, must it provide for due process in the event that any service or right is to be terminated? Certainly, if it is a constitutional right. But what of the plaintiff here? Is this court to rule, as Small contends, that a pretermination hearing be required before a customer of cable can be deprived of service?
There is a long line of decisions (that need not be cited here) to the effect that due process requires a pretermination hearing if the State is to terminate welfare and unemployment benefits, driver’s licenses or tax exemptions.
*822 In the case of utilities, it has been held that due process does attach to a termination of electrical service, but that it does not necessarily follow that a hearing prior to termination is required. (Bronson v Consolidated Edison Co., 350 F Supp 443.) A balance may be struck between the need of the utility (State) to have its bills paid and the extent of deprivation to the customer.
This court could conclude that cable television service does not appear to be vital to the existence and livelihood of an individual, and therefore of insufficient importance to necessarily invoke constitutional protection. However, such a ruling would require a subjective determination of what is “vital” and ignores the very substantial advances in cable technology that may soon find the public relying on cable for education, banking, and other commercial purposes, as well as entertainment.
Therefore, at this point, this court will consider the right to subscribe to cable service as a constitutionally protected right, albeit of minimal importance. Accordingly, Cable will not have to meet the constitutional standard of, for example, an electric utility, but it will have to demonstrate that its procedures provide for some reasonable notice to its subscribers in order to avoid a precipitous and arbitrary termination of service. Clearly no hearing will be required prior to termination for cable service.
Section 590.67 of the regulations promulgated by the Commission on Cable Television (9 NYCRR) provides that a cable television company may discontinue service for nonpayment of its service charges if the subscriber is delinquent in payment. Subdivision (a) defines delinquent as a bill unpaid 30 days after its due date.
According to 9 NYCRR 590.67 (b) (3) discontinuation of cable must await eight days’ notice by mail. The notice shall state the amount of the arrears, the total amount to be paid, when the payment is due and where to pay.
The undisputed testimony was that Small was 88 days in arrears as of the date of termination and that a notice of impending termination was annexed to his monthly bills, for February and March which also contained all of the information required by 9 NYCRR 590.67.
*823 The regulations of the commission also provide for procedures to be followed in the event of a dispute, including commission inquiries, hearings and oral argument. (9 NYCRR 590.5.)
This court therefore concludes that the right to cable television service is constitutionally protected; that the procedures promulgated by the State’s Commission on Cable Television satisfy constitutional requirements; that Small was notified of impending termination and neglected to pay his bill; and that the defense that his bill was small (no pun intended) is not worth comment.
Accordingly, judgment for the defendant, together with costs and disbursements.